UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER E. JAMES,

                                                                       DECISION and ORDER

                                       Plaintiff,

-vs-

                                                                     6:20-CV-6952 CJS

ANTHONY J. ANNUCCI, Commissioner,
PAUL PICCOLO, Superintendent,

                                       Defendants.
_____

INTRODUCTION

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who bring this action under 42 U.S.C. § 1983 alleging that Defendants violated his federal constitutional rights by failing to take adequate precautions to protect him from Covid-19.  Now before the Court is Defendants' Motion to Dismiss the Complaint (ECF No. 15). For the reasons discussed below, Defendants' motion is granted and this action is dismissed.

BACKGROUND

On November 6, 2020, Plaintiff commenced this action by filing a Complaint protesting the conditions of confinement at Southport Correctional Facility ("Southport") related to the Covid-19 Pandemic.  The Complaint alleges that between July 2020 and November 2020 Plaintiff was housed in the B Block at Southport which, the Complaint alleges, was "very dirty" and "unhygienic," and which lacked proper procedures to prevent the spread of Covid-19.

1

The Complaint purports to state two causes of action. The First Cause of Action is asserted against Acting DOCCS Commissioner Anthony Annucci for violation of Plaintiff's Eighth Amendment rights based on "deliberate indifference and inadequate health care." In that regard, the Complaint alleges that Annucci

> failed to adequately provide a 'safe haven' in Southport Corr. Facility from Covid-19 due to not enforcing or creating executive policies & procedures to battle & prevent "exposure" of the virus to inmates, which enabled [Plaintiff] to experience "symptoms" such as shortness of breath, headaches & chest pains while housed at D Block in Southport, a very dirty and unhygienic housing block in the jail.

Compl. at 5. Although this statement implies that Plaintiff contracted Covid-19, Plaintiff admits elsewhere in his papers that he was not diagnosed with Covid-19 and that he does not know whether it was Covid-19 or something else that caused his symptoms. *See*, ECF No. 18 at ¶ 3.

The Second Cause of Action is asserted against Paul Piccolo, the Superintendent at Southport during the relevant period. In that regard, the Complaint asserts that Piccolo

> refused to supervise & operate prison staff to wear mask as "optional," did not accommodate the idea of "social distancing," refused to provide bleach, soap, disinfectants & other cleaning products on B Block on a more substantial basis, d[id] not compel medical personnel to troubleshoot or survey inmates to make sure they [were] not experiencing symptoms & continued to operate/supervise the jail in a "neglectful manner" to Covid-19.

The Complaint demands money damages and an order reducing Plaintiff's sentence from 25-years-to-life to "time served." Along with the Complaint, Plaintiff filed an application to proceed *in forma pauperis*.

The Complaint acknowledges that Plaintiff did not exhaust his administrative remedies before commencing this action. Plaintiff asserts that he did not do so because

of the "emergency" nature of the situation. Although, Plaintiff did not file the instant action until five months after the alleged unconstitutional situation began in July 2020.

Initially, the Court dismissed the action without prejudice based on Plaintiff's failure to either pay the filing fee or provide the proper financial information. *See*, Order (ECF No. 4). However, on December 11, 2020, Plaintiff re-opened the action by submitting a new application for leave to proceed *in forma pauperis* with the appropriate documentation.

On January 5, 2021, the Court issued an Order (ECF No. 9) granting the application to proceed *in forma pauperis*, allowing certain claims to proceed, dismissing other claims and permitting Plaintiff to file an amended pleading. More specifically, the Court indicated that insofar as the Complaint alleged Eighth Amendment violations based on conditions of confinement, the action could proceed:

> Liberally read, the Complaint alleges that Plaintiff was exposed to the COVID-19 virus from July 2020 to the present and began experiencing shortness of breath, headaches, and chest pains while confined to the "very dirty" and "unhygienic" [B]-block housing unit of Southport. Docket Item 1 at 5. Further, prison officials were not required to wear masks or "accommodate" social distancing, and no bleach, soap, disinfectant, or other cleaning products were provided "on a more substantial basis." *Id*. at 6. Defendants also failed to "compel" the medical staff to "survey" inmates to determine whether they had any symptoms of the virus. *Id*.
> 
> ***
> 
> The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The assessment of whether those measures are reasonable is based on two factors. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, prison officials must be shown to have demonstrated a deliberate indifference to the inmate's safety. *Id*. Deliberate indifference is measured subjectively.

3

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to [the] inmate['s] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837.

Here, Plaintiff asserts that the conditions of confinement described, an unhygienic housing unit combined with a lack of mandatory masking, social distancing, and an appropriate level of sanitation, placed him at a substantial risk of harm. Liberally read, the Complaint accuses Defendants Annuci and Piccolo of failing to take adequate precautions and enact policies that are commonly understood to limit the risk of exposure to COVID-19 in prisons.

It is "undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 440 (D. Conn. 2020).

> "Further, given the pervasive daily media coverage of the pandemic, the seriousness of the threat posed by COVID-19—and the particular vulnerability of elderly individuals as well as those with certain preexisting medical conditions—are so well known that it would be implausible to suggest that prison officials are unaware of this risk."

*Id*. at 441. At this early stage of litigation, the Court finds that Plaintiff's allegations concerning the lack of appropriate COVID-19 protocols at Southport are sufficient to warrant service and a response from Defendants. This claim will go forward.

Order (ECF No. 9) at pp. 3–4.

The Court indicated, however, that to the extent the Complaint was attempting to assert an Eighth Amendment claim based on deliberate indifference to a serious medical

4

need, the Complaint failed to state such a claim. The Court indicated, though, that Plaintiff could attempt to re-plead such claim if he filed an amended complaint within 45 days. The Court also dismissed money-damages claims asserted against Defendants in their official capacities.

Additionally, the Court ruled that insofar as the Complaint demanded that Plaintiff be released from prison, such relief was not obtainable in an action under Section 1983 and could only be obtained via a petition for habeas corpus.

On January 13, 2021, Plaintiff responded to the Court's Order by indicating that he would not file an amended complaint and would instead proceed on just the claims which the Court had indicated could go forward. (ECF No. 10). Plaintiff also submitted what purports to be a 1-page petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which he asked to be "consolidated" with his Complaint. Plaintiff indicated that he did this so that the Court would have jurisdiction to order his release from prison as part of the relief granted in this action.

On January 19, 2021, the Court issued an Order (ECF No. 11) noting that Plaintiff had declined to file an amended pleading and directing service on the Defendants. The Court's Order did not address Plaintiff's request for consolidation.

On March 11, 2021, Defendants filed the subject motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to require Plaintiff to file a more definite statement.[1] Defendants contend that the Complaint fails to state an Eighth Amendment claim against either Defendant. Defendants also point out that Plaintiff did

---

[1] Defendants' papers do not provide a basis under Rule 12(e) for the Court to require a more definite statement.

5

not exhaust his administrative remedies.[2]

In support of the motion, Defendants submit materials outside of the pleadings, consisting of an affirmation from counsel ("counsel's affirmation"); a printout indicating the dates that Plaintiff was housed at Southport ("the date printout"); a DOCCS "General Housekeeping Manual" dated "11/2020" ("the Housekeeping Manual"); and an affidavit from Piccolo ("the Piccolo affidavit"). Counsel's affirmation directs the Court's attention to a report on DOCCS' public website (http://doccs.ny.gov/doccs-covid-19 report) that lists the measures that are being taken by DOCCS to address the Covid-19 Pandemic, which reportedly include mandating that all staff wear face masks, supplying masks to inmates, providing hand sanitizer and educating inmates on how to prevent the spread of the virus. The date printout indicates that Plaintiff was housed at Southport between the dates of September 10, 2020 and January 28, 2021, after which he was transferred to a different facility. The Housekeeping Manual is a list of general cleaning procedures that is not a specific to the Covid-19 Pandemic. Piccolo's affidavit, consisting of 2-pages, indicates that at Southport he enforced all DOCCS policies concerning Covid-19, including requirements that staff wear face masks, that inmates be provided with a bleach solution to clear their cells, and that inmate porters clean common areas of the facility several times per day. Piccolo indicates that to his knowledge the staff at Southport were in substantial compliance with all such Covid-19 requirements during the relevant time. Additionally, Piccolo states that Southport was inspected by the DOCCS Office of Special

---

[2] Failure to exhaust administrative remedies is an affirmative defense, and Plaintiff is not required to plead that he exhausted such remedies. The Court can address an affirmative defense on a Rule 12(b)(6) motion where the defense is apparent from the face of the complaint. Here, the Complaint admits that Plaintiff did not exhaust, though it alleges that he was unable to do so. Defendants did not really develop this point in their motion to dismiss.

Investigations every two weeks to confirm that the facility was complying with DOCCS' Covid-19 requirements, and that to the extent any problems were found during such inspections they were corrected.

For their legal argument, Defendants contend that the Complaint fails to allege an Eighth Amendment violation since "DOCCS's efforts to protect prisoners from Covid-19 prohibit a finding of an Eighth Amendment violation even if Plaintiff could show a substantial risk of serious harm, which he cannot." In that regard, Defendants argue that the information submitted, including the information currently posted on the DOCCS website, show that "DOCCS is taking substantial steps to reduce and restrict transmission [of Covid-19] in the inmate population." Defendants state, for example, that Annucci "implemented emergency protocols" that follow the Center for Disease Control's ("CDC") recommendations for correctional facilities, and that Piccolo enforced those protocols at Southport. Defendants further argue that the Complaint fails to plausibly allege that either Annucci or Piccolo acted with deliberate indifference to any serious risk to Plaintiff's health.

Plaintiff filed a 1-page response (ECF No. 18) in which he opposes Defendants' application. Plaintiff acknowledges that he has not alleged that either he or other inmates at Southport contracted Covid-19 due to Defendants' actions. However, he contends that discovery would likely show that there were such inmates. Further, he admits that he did not seek medical treatment for his own symptoms, though he contends that he did not have the option of obtaining Covid-19 testing at the time of his symptoms. Further, Plaintiff alleges that the policies and procedures cited by Defendants only require compliance on a "superficial level," and that the procedures were not followed "on a day-

to-day basis."  Lastly, Plaintiff asserts that Defendants were deliberately indifferent to his safety since they "allow[ed] prison staff to 'observe' the pandemic of their 'own accord.'" The meaning of this statement is not clear, but the Court will liberally construe it to mean that Defendants did not adequately mandate or monitor staff compliance with the Covid-19 procedures.

The Court has considered the Complaint and the parties' submissions.

## DISCUSSION

### Plaintiff is Proceeding *Pro Se*

Since Plaintiff is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Plaintiff's Request for Consolidation is Denied

As discussed earlier, upon screening Plaintiff's Complaint the Court noted that Plaintiff could not obtain part of the relief that he was seeking, namely, his immediate release from prison, in an action under Section 1983.  The Court indicated that "to the extent that Plaintiff is requesting his immediate release, it is well settled that when a litigant makes a constitutional challenge that affects the overall length of his imprisonment the "sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Plaintiff evidently understood that to mean that he could simply add a "habeas corpus claim" to this action, and thereby obtain his release from prison, by submitting a 1-page "habeas petition" and asking that it be consolidated with this action. *See*, ECF No. 10.  However, the Court declines to do what Plaintiff proposes, for several

reasons.³  The proposed action is outside the scope of what the Court permitted in its screening order.  Moreover, there is no actual separate habeas action to consolidate with this action.  Additionally, Plaintiff is no longer housed at Southport, and neither of the two defendants would be a proper respondent in a habeas petition.  Finally, the Court is dismissing this action.  Consequently, if Plaintiff wishes to pursue a habeas corpus claim, he may file a separate habeas corpus action.

Section 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983.  "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).

To establish liability under § 1983 the Plaintiff must demonstrate each defendant's personal involvement in the alleged constitutional violation:

> A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Because vicarious liability is inapplicable to § 1983 suits, [the plaintiff] must raise a genuine dispute as to whether each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016) (citations and internal quotation marks omitted).

[T]here is no special rule for supervisory liability. Instead, a plaintiff must

---

³ In this Circuit there is no prohibition on combining a Section 1983 claim and a habeas corpus claim in the same action. *See, Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008) ("[W]e know of no[ basis] for the view that a petitioner may not seek relief under both a habeas statute and § 1983 in a single pleading.").

> plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution. The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly.
>
> In this case, to state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with deliberate indifference. Deliberate indifference in this context means the official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020) (citations and internal quotation marks omitted).

<u>Motions Under Rule Fed. R. Civ. P. 12(b)(6)</u>

Defendants maintain that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

> conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted). When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

     As for what the Court may consider when addressing a Rule 12(b)(6) application, it is clear that,

>the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.[4]

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted); *see also, Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.") (citations omitted).

On a Rule 12(b)(6) motion the Court may take judicial notice of matters of public record, such as documents "promulgated by or binding on a government agency." *See, Richardson v. New York City Bd. of Educ.*, 711 F. App'x 11, 13–14 (2d Cir. 2017) ("In reviewing a complaint on appeal from a motion to dismiss, we are not precluded from taking notice of items in the public record. . . . Here, the three documents at issue (a city regulation and two collective bargaining agreements between the BOE and a teachers union) are all public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute, as their contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).") (citations and internal quotation marks omitted); *see also, Okoi v. El Al Israel Airlines*, 378 F. App'x 9, 11 (2d Cir. 2010) (Indicating that court may take judicial

---

[4] "A court may take judicial notice of a fact 'that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Fed. R. Evid. 201(b)." *Cameron v. Menard*, No. 5:18-CV-204-GWC-JMC, 2019 WL 4675500, at *3 (D. Vt. Aug. 13, 2019), *report and recommendation adopted*, No. 5:18-CV-204, 2019 WL 4674821 (D. Vt. Sept. 25, 2019).

notice of "excerpts of a government publication."). The Court may take judicial notice of documents on DOCCS' website. *See, e.g., Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 1:20-CV-4736-GHW, 2021 WL 2403088, at *5 (S.D.N.Y. June 11, 2021) ("[W]hen considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of 'documents retrieved from official government websites,' *see Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015), or other 'relevant matters of public record,' *see Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)[.]"). The Court may also take judicial notice of DOCCS directives. *See, e.g., Nimmons v. Fischer*, No. 11-CV-817-A, 2013 WL 4495006, at *10 (W.D.N.Y. Aug. 20, 2013) ("The court takes judicial notice that since 2010 DOCCS Directive 4914, which previously forbade non-Rastafarian inmates from wearing dreadlocks, has permitted dreadlocks be worn by any inmate regardless of specific religious designation. See DOCS Directive 4194.III(B)(2)"); *see also, Bryant v. Capra*, No. 18-CV-10198 (KMK), 2020 WL 508843, at *5 (S.D.N.Y. Jan. 31, 2020) ("The Court may take judicial notice of the content of DOCCS Directive 4914, especially because Plaintiff relied on it heavily throughout the [Complaint].").

<u>Defendants' Submission of Materials Outside of the Pleadings</u>

Here, the Court notes at the outset that Defendants have not offered any basis upon which the Court may consider Piccolo's affidavit on a Rule 12(b)(6) application, and consequently the Court does not consider it. As for the other sources of information outside of the Complaint referenced above, consisting of DOCCS policies and information on DOCCS's website, the Court finds that it may take judicial notice of them. Doing so, the Court finds that Plaintiff's claim against Piccolo must be dismissed insofar as it alleges

13

wrongdoing prior to Plaintiff's arrival at Southport. In that regard, the Complaint alleges that the constitutional violation occurred between July 2020 and November 2020. However, the date printout submitted by Defendants shows, and Plaintiff does not now dispute, that Plaintiff was only at Southport between September 10, 2020 and January 24, 2021. Consequently, any claims against Piccolo arising prior to September 10, 2020 are dismissed.

Otherwise, consideration of DOCCS's publicly-available agency documents does not show Defendants' entitlement to dismissal of the Complaint. The existence of the Housekeeping Manual, for example, which was apparently drafted at some time during November 2020, does not specifically pertain to, or even mention, Covid-19. At most, the document counters Plaintiff's contention that Annucci failed to enact policies concerning the cleanliness of the prisons in general. However, the thrust of Plaintiff's claim is the alleged failure to enact policies specific to the Covid-19 outbreak. Finally, the information presently appearing on the DOCCS website concerning Covid-19 protocols does not indicate *when* DOCCS adopted the procedures described therein.[5] The website therefore does not establish that such procedures were in place during the period relevant to this lawsuit.

<u>The Legal Sufficiency of the Complaint</u>

The resolution of the remainder of Defendants' motion therefore turns on the

---

[5] It is apparent that some version of the policies were set forth at least as early as April 2020, but it is unclear if the policy has been changed since then. *See, e.g., Macaluso v. Keyser*, No. 18-CV-4830 (RRM), 2020 WL 8455536, at *1 (E.D.N.Y. Apr. 17, 2020) ("New York prison and state officials are in the best position to evaluate which prisoners sentenced in the state may be best subject to release under state laws and protocols. *See, e.g.*, Department of Corrections and Community Supervision COVID-19 Report, New Protocols, Releases, available at doccs.ny.gov/doccs-covid-19-report[.]").

sufficiency of the Complaint itself, without regard to the additional materials submitted by Defendants. Of course, the Court already rendered an opinion in that regard when it screened the Complaint initially and found that the Eighth Amendment conditions-of-confinement claim could proceed. *See*, Order (ECF No. 9). However, the Court is now in a better position to review the Complaint, having the benefit of the legal arguments in Defendants' memo of law and having reviewed Plaintiff's response to the motion to dismiss. Having reconsidered the Complaint in light of the applicable legal standards set forth above, the Court finds that the Complaint fails to plausibly plead the requisite personal involvement by either Defendant.[6] On this point, the Court is mindful that despite the liberal pleading standards in federal court, "[w]e do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *D'Alessandro v. City of New York*, 713 F. App'x 1, 10–11 (2d Cir. 2017).

In this regard, the allegation against Annucci is that he "failed to adequately provide a 'safe haven'" from Covid-19 at Southport "due to not enforcing or creating executive policies & procedures to battle & prevent 'exposure' of the virus to inmates." As factual support for this conclusory statement, Plaintiff alleges only that 1) the B Block at Southport was "very dirty & unhygienic"; and 2) he experienced symptoms, consisting of "shortness of breath, headaches & chest pains" that may or may not have been attributable to Covid-19 and for which he did not seek medical treatment. This is insufficient to state an Eighth Amendment claim against Annucci, even assuming that the dangers of Covid-19 were well known at the time, as the Court's original screening order emphasized. The sparse facts alleged by Plaintiff do not plausibly suggest that Annucci failed to enact policies to

---

[6] In retrospect, the Court did not give adequate attention to the necessity of pleading the subjective aspect of deliberate indifference.

15

protect inmates from Covid-19 or that he was otherwise deliberately indifferent to some excessive risk to Plaintiff's health. *See, e.g., McFadden v. Annucci*, No. 18-CV-6684 FPG, 2021 WL 463829, at *14 (W.D.N.Y. Feb. 9, 2021) ("It is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death. However, Plaintiff's conclusory allegations fail to allege the subjective component of an Eighth Amendment claim and contain no amplifying details regarding Defendants' awareness that COVID-19 preventative measures were not being followed. Allegations of such awareness is necessary to sufficiently plead that these Defendants acted recklessly despite knowing the substantial risk that COVID-19 posed to McFadden and other inmates.") (citations and internal quotation marks omitted).

Moreover, Plaintiff's conclusory allegations concerning Annucci are belied by the historical record, which indicates that DOCCS enacted procedures to address the Covid-19 outbreak inside New York's prisons at least as early as April 2020, long before the events at issue in this action. *See, e.g., Macaluso v. Keyser*, 2020 WL 8455536, at *1 ("New York prison and state officials are in the best position to evaluate which prisoners sentenced in the state may be best subject to release under state laws and protocols. *See, e.g.,* Department of Corrections and Community Supervision COVID-19 Report, New Protocols, Releases, available at doccs.ny.gov/doccs-covid-19-report."). Accordingly, the claim against Annucci is dismissed.

The allegation against Piccolo is that he "refused to supervise & operate prison staff to wear mask as 'optional," did not accommodate the idea of 'social distancing,' refuse[d] to provide bleach, soap, disinfectants & other cleaning products on B-Block on a more substantial basis [and did] not compel medical personnel to troubleshoot or survey

inmates to make sure they are not experiencing symptoms," and that he "continue[d] to operate/supervise the jail in a 'neglectful manner' to Covid 19." Plaintiff's basis for making these conclusory assertions is not explained in the Complaint. Presumably, though, it is because Plaintiff observed that some staff were not wearing masks, that he felt that cleaning supplies should have been made available on a "more substantial basis" than they were, and that he did not feel, in his layman's opinion, that medical staff were doing enough to monitor inmates' symptoms. Completely missing from the Compliant, however, is any factual allegation concerning Piccolo's personal involvement in these matters. Plaintiff offers no facts to plausibly suggest that Piccolo was personally aware of those circumstances and ignored them with the requisite mindset. Accordingly, the Complaint fails to plausibly allege *Piccolo's* personal involvement in the alleged Eighth Amendment violation, even assuming that the Complaint otherwise adequately stated an Eighth Amendment claim generally, which the Court doubts given the novelty of the situation and and rapidly-evolving state of medical knowledge concerning Covid-19.

<u>Further Leave to Amend is Denied</u>

"A *pro se* plaintiff should be granted leave to amend if a liberal reading of the complaint gives any indication that a valid claim might be stated." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 320 (2d Cir. 2020) (citation and internal quotation marks omitted). However, leave to amend may be denied on the basis of futility, such as where the plaintiff has failed to state a claim despite being given repeated opportunities. *See, Sun v. City of New York*, 803 F. App'x 469, 472 (2d Cir.) ("Ordinarily, we would not approve of dismissing a *pro se* complaint without giving the plaintiff an opportunity to amend at least once when a liberal reading of the complaint gives any

17

indication that a valid claim might be stated. Leave to amend may be denied, however, where it appears that amendment would be futile[.] Given the lengthy history of this litigation and Sun's failure to clarify either the role that Cunningham allegedly played in the January 2005 incident or the basis for municipal liability, we conclude that this case presents an exceptional circumstance in which leave to amend is inappropriate.") (citations and internal quotation marks omitted), *cert. denied*, 141 S. Ct. 940, 208 L. Ed. 2d 477 (2020), *reh'g denied sub nom. Lingfei Sun v. City of New York, New York*, 141 S. Ct. 1460, 209 L. Ed. 2d 177 (2021)

Here, it does not appear that Plaintiff could state a valid claim against Annucci or Piccolo even if given a further opportunity to amend, since he does not seem to have any factual basis to allege personal involvement and/or deliberate indifference by either defendant. In that regard, after setting forth the relevant standard in their motion papers, Defendants argued that,

> Plaintiff's Complaint fails to allege that Annucci or Piccolo knew of and disregarded a serious risk to Plaintiff's health. He does not allege they knew of his symptoms. He does not allege that he was exposed to the Covid virus or that the Defendants knew of such exposure.
> ***
> Plaintiff presents no plausible allegation that Superintendent Piccolo acted with deliberate indifference to his health and safety.

ECF No. 15-5 at pp. 6, 9. Further, Defendants' counsel's affirmation argued that "Plaintiff's generalized allegations that some unnamed staff members may not have complied with DOCCS policies are insufficient to establish that Annucci or Piccolo had any knowledge or information about such failures if they occurred." ECF No. 15-1 at p. 6. In response to those arguments, Plaintiff offers only the following bald assertion: "I assert that Defendants 'were' deliberately indifferent to my being confined in Southport during

18

this pandemic & failed to protect me from Covid-19 by allowing prison staff to 'observe' the pandemic of their 'own accord' and in doing so, showed by were 'totally unconcerned' with my well-being & welfare."[7]  This statement merely begs the question of Defendants' knowledge and adds nothing to the conclusory assertions in the Complaint.  Presumably, if Plaintiff had any factual basis to allege that Defendants were aware that staff were not following Covid-19 guidelines he would have disclosed it by now.  Accordingly, the Court finds that further leave to amend must be denied on the ground of futility. *See, Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.")

## CONCLUSION

Defendants' motion to dismiss (ECF No. 15) is granted and this action is dismissed.  The Clerk is directed to close the action.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
August 3, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

---

[7] ECF No. 18 at pp. 1–2.